UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID J. PUGH,

                **Plaintiff,**

        v.                                **5:04-CV-1094**
                                               **(FJS/GJD)**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**
_____

APPEARANCES                                OF COUNSEL

OLINSKY & DIMARTINO, LLP         HOWARD D. OLINSKY, ESQ.
186 West First Street
P.O. Box 2068
Oswego, New York 13126
Attorneys for Plaintiff

OFFICE OF THE                       WILLIAM H. PEASE, AUSA
UNITED STATES ATTORNEY
100 South Clinton Street
Syracuse, New York 13261
Attorneys for Defendant

SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Having exhausted his administrative remedies, Plaintiff filed this action pursuant to 42

U.S.C. § 405(g), seeking judicial review of the ALJ's decision to deny him benefits. Magistrate

Judge Di Bianco reviewed the administrative record and the parties' submissions and, on

September 9, 2005, issued a Report-Recommendation in which he recommended that this Court

uphold the ALJ's findings and dismiss this action.  Currently before the Court are Plaintiff's

objections to that recommendation.

## II. BACKGROUND

Plaintiff is currently 54 years old.[1]  He is a high-school graduate who, while enrolled in

school, attended special education classes.  In addition, Plaintiff attended Vocational and

Educational Services for Individuals with Disabilities ("VESID") and graduated from the Sidney

Johnson Center in 1996.  After he graduated from VESID, the State certified him as a New York

State automobile inspector.

Plaintiff's employment history was not limited to automobile inspections.  He worked for

Burger King as a maintenance man and for Meineke Muffler.  Additionally, he held positions as a

janitor, a  taxi-cab driver, and a security guard, as well as a job within the food-catering industry.

On March 14, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB"

or "benefits") with the Social Security Administration ("the Administration").[2]  Plaintiff asserts

that he is disabled within the meaning of the Social Security Act ("the Act").  Specifically, he

claims that he is both mentally and physically disabled because he suffers from borderline

intellectual functioning and symptomatic sinus bradycardia, which results in periodic dizziness

---

[1]  Plaintiff was born on April 12, 1952.

[2]  Plaintiff previously filed applications for DIB on July 1, 1996, and May 11, 1999.  The
Administration denied these applications.  These prior applications are not currently before the
Court.

and fainting spells.  Moreover, he claims that he has significant coronary artery disease, asthma, and shoulder and neck pain.  As a result of Plaintiff's combined ailments, he alleges that he is unable to work and is, therefore, eligible for DIB.

After the Administration denied Plaintiff's claim as an initial matter and later on reconsideration, he requested a hearing before an ALJ.  On March 19, 2003, the ALJ held a hearing and found that Plaintiff was not disabled.[3]  On August 5, 2004, the Appeals Council denied Plaintiff's request for further review.

### III. DISCUSSION

**A.      Standards of Review**

*1. Magistrate Judge's Recommendations*

When a magistrate judge files a report and recommendation, the district court makes a *de novo* determination of those portions of the report to which a party objects.  *See* 28 U.S.C. § 636(b)(1)(C).  The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommendations.  *See id.*

*2. Social Security Disability Determination*

 Under 42 U.S.C. § 405(g), the court may reverse an ALJ's determination only upon a finding that the ALJ's decision was based upon legal error or was not supported by substantial

---

[3] The ALJ issued a written decision explaining his findings on June 19, 2003.

evidence in the record.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003) (citations omitted).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 106 (quotation omitted).

The Social Security Act provides benefits to any individual who is "disabled" within the meaning of the Act.  *See* 42 U.S.C. § 423(a), (d).  To qualify for such benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is entitled to benefits, the ALJ uses a five-step process to evaluate claims.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the ALJ will not consider the claimant disabled.  *See id.*  However, if the claimant is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a severe impairment.  *See* 20 C.F.R. § 404.1520(c).  If the claimant does suffer from a severe impairment, the third inquiry requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 404.1520(d).  If so, the claimant is considered disabled.  *See* 20 C.F.R. § 404.1520(d).  Next, however, the ALJ must determine the claimant's residual functional capacity and ability to engage in past relevant work.  *See* 20 C.F.R. § 404.1520(e).  Finally, if the ALJ determines that the claimant cannot engage in his past relevant work, he must decide whether the claimant can perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f).

Within this framework, the claimant has the burden of proof as to the first four steps, and the Commissioner has the burden of proof as to the last one.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)) (other citation omitted).  In applying these five steps, the ALJ must consider the record in its entirety, including objective medical evidence and the claimant's own subjective statements regarding his impairment and condition, and the claimant's background with respect to age, education, and work experience.  *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (citation omitted).

In this case, Plaintiff contends that Defendant erred in denying his application for benefits.  Specifically, Plaintiff  argues that the ALJ did not properly evaluate the limitations that borderline intellectual functioning placed on him.  Moreover, he claims that the ALJ erred by failing to evaluate adequately his ability to stand, walk and bend consistent with his past work and by not providing a reasonable explanation as to why he credited some of Plaintiff's statements but not others.  The Court will address each of Plaintiff's objections in turn.

## B.   **Borderline Intellectual Functioning**

The ALJ found that, based on medical evidence within the record, Plaintiff was severely impaired within the meaning of the Act.[4]  *See* Administrative Record ("AR") at 15.  However, he also determined that Plaintiff's impairments, while severe, did not "meet or medically equal one

---

[4] In his written determination, the ALJ stated that "the medical evidence indicates that [Plaintiff] has coronary artery disease (CAD); and mild depression, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *See* Administrate Record at 16.

of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *See id.* at 16.  Plaintiff

argues that the ALJ erred in finding that his condition was not a severe impairment.  Specifically,

he asserts that the ALJ did not properly evaluate his borderline intellectual functioning and did

not consider the significant limitations that he endures as a result of this condition.

Under the Act's regulations, "[m]ental retardation refers to significantly subaverage

general intellectual functioning with deficits in adaptive functioning initially manifested during

the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment

before age 22." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.05.  The regulations establish

four sets of criteria to determine mental retardation.  At issue in this case is subsection 12.05(C),

which requires both (1) "[a] valid verbal performance, or full scale IQ of 60 through 70" and (2)

"a physical or other mental impairment imposing an additional and significant work-related

limitation of function."  *Id.*  If the claimant meets both of these requirements, he is presumed

disabled at step three of the ALJ's inquiry.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

Applying this criteria, Plaintiff fails to meet the first prong of the analysis.  The medical

evidence before the ALJ established that Plaintiff had IQ scores of 79, 80, and 82 regarding

performance, full-scale, and verbal IQ, *see* AR at 204, all of which fall outside subsection

12.05(C)'s requirement that a claimant have "[a] valid verbal performance, or full scale IQ of 60

through 70."

Although the ALJ did not specifically refer to Plaintiff's IQ scores in his written

determination, this information was in the record before him; and, it is the Court's job to review

the full record to ensure that there is substantial evidence to support  the ALJ's decision.  *See*

*Green-Younger*, 335 F.3d at 106.  In this case, because the record specifically refers to Plaintiff's

IQ scores and those scores are dispositive of this issue, it is clear that Plaintiff cannot meet the

requirements of subsection 12.05(C).

Accordingly, the Court adopts Magistrate Judge Di Bianco's recommendation and affirms

the ALJ's finding that, although Plaintiff suffers from a severe impairment, his impairment does

not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

§ 404.152(d).

## C.     **Plaintiff's Ability to Stand, Walk and Stoop at the Level Required by His Past Work**

In determining Plaintiff's residual functioning capacity, the ALJ found that Plaintiff

retained the ability "to perform at least light and sedentary work, with lifting 20 pounds

occasionally and 10 pounds frequently, and prolonged sitting, standing, and walking." *See* AR at

18.  Under the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time

and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  [A] certain

amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R.

§ 404.1567(a).  Moreover, "[l]ight work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds.  [A] job is in this category when

it requires a good deal of walking or standing, or when it involves sitting most of the time with

some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Finally, if an ALJ

determines that a complainant can do "light work," then "he or she can also do sedentary work . .

. ."  *Id.*

Plaintiff asserts that the ALJ erred by failing to consider his ability to perform certain exertional functions as outlined in Exhibit 16E and by considering only lifting requirements outlined in the same. Plaintiff further contends that the ALJ's failure to make specific findings regarding his ability to stand, walk and stoop compounds the ALJ's incomplete RFC assessment and, therefore, constitutes legal error.

Reviewing the record as whole, there is ample evidence to support the ALJ's determination that Plaintiff can perform light and sedentary work, which includes standing, walking, and bending at the level his past work required. Dr. Kalyani Ganesh examined Plaintiff in 1999 and concluded that, based upon the medical information regarding Plaintiff's work-related activities, "he does not appear to have any gross physical limitations."[5] *See* AR at 316. In 2001, after Plaintiff suffered a mild stroke, Dr. Ganesh examined Plaintiff again and concluded that "[h]e does not appear to have gross physical limitations to sitting, standing, or the use of his upper extremities. He has mild degree of limitation to walking and climbing." *See id.* at 366. Finally, Dr. Ganesh found that Plaintiff's "use of the cane does not appear to be a necessity." *See id.* at 366.

The Court also notes that, although Plaintiff claims that he has significant coronary artery disease, the medical evidence before the ALJ tells a different story. Veterans Administration ("VA") doctors determined that Plaintiff had "**insignificant coronary artery disease**" and further concluded that Plaintiff's complained-of chest pain was "atypical" and "**noncardiac**" in

---

[5] In 1999, the New York State Division of Disability Determinations initially sent Plaintiff to Industrial Medicine Associates, P.C. for a complete examination. Dr. Ganesh was Plaintiff's attending doctor at Industrial Medicine Associates.

origin.  *See* AR at 476.

Moreover, as the ALJ noted, Plaintiff's past relevant work experience as a janitor

included responsibilities such as  taking out the trash.  In this capacity, Plaintiff often lifted fifty

pounds or more.  *See* AR at 176.  As a maintenance man at Burger King, Plaintiff cleaned the

bathrooms and grills, took out the trash, and unloaded trucks.  In this capacity, Plaintiff often

lifted up to twenty-five pounds.  *See id.* at 177.  As an auto-mechanic/oil changer, Plaintiff had to

lift and carry mufflers, tools, oil filters, and cans of oil.  In this capacity, Plaintiff often lifted up

to ten pounds.  *See id.* at 178.  Plaintiff's prior work experience, coupled with the medical

evidence in the record, constitutes substantial evidence that he is capable of light and sedentary

work, which includes standing, walking, and bending.

Although it is true, as Plaintiff contends, that "[t]he ALJ did not make a specific finding

in the RFC assessment regarding [his] ability to stand, walk and stoop," *see* Plaintiff's Objection

to the Magistrate's Report-Recommendation at 4, this does not mean that the ALJ committed

reversible legal error.  Reviewing the record as a whole, it is clear that there was substanital

evidence to support the ALJ's conclusion that Plaintiff retained the ability to stand, walk, and

stoop consistent with the nature of light and sedentary work.  Specifically, after examining

Plaintiff's medical history, statements and credibility, the ALJ noted that

> [t]he evidence in this case establishes that the claimant has past
> relevant work as an auto mechanic/oil changer, and as a security
> guard, jobs that were both described by him in submitted
> documentation as involving no great lifting - no more than 10
> pounds in the first instance, and none at all in the second. (Exhibit
> 16E).

*See* AR at 18.

In referring to Exhibit 16E, Plaintiff's Work History Report, the ALJ essentially found that Plaintiff retained his prior ability to walk, stand, and stoop in accord with the demands of light and sedentary work.  The ALJ's failure to explicitly use these terms neither undermines his decision nor is it, as Plaintiff's contends, "critical to the outcome of [this] case," s*ee* Plaintiff's Objection to the Magistrate's Report-Recommendation at 5 (quoting SSR 96-8p).

Accordingly, the Court adopts and affirms the ALJ's finding that Plaintiff has the residual functional capacity to perform at least light and sedentary work, which includes standing, walking, and bending at the level that his past work required.[6]

### D.    Plaintiff's Past Work as an Auto-Mechanic/Oil Changer and Security Guard

Based upon the record before him, the ALJ concluded that, based upon his RFC assessment, Plaintiff could return to his previous work either as an auto-mechanic/oil changer or

---

[6] Plaintiff also argues that the ALJ failed to reconcile his description of his past work with respect to standing for a prolonged period of time with SSR 83-10's description of "light work" as constituting standing "up to two-thirds of a workday. . . ." *See* Plaintiff's Objection to the Magistrate's Report-Recommendation at 5 (citing SSR 83-10).  The Court rejects this argument because the two are not inconsistent.  In describing "light work," SSR 83-10 states that "'[f]requent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.  In describing his past work, Plaintiff states that he "frequently" lifted, as a Janitor up to 50 pounds, as maintenance man up to 25 pounds, and as an auto-mechanic/oil changer up to 10 pounds, which means that Plaintiff was previously on his feet, in each of these capacities, "from 1/3 to 2/3 of the workday." *See* AR at 176-78.  As a result, there is no conflict to rectify.  Plaintiff's description of his past work is entirely consistent with the demands of light and sedentary work.

as a security guard. Plaintiff objects to this finding on the ground that, because his earnings as an auto-mechanic/oil changer and security guard fell below substantial gainful activity levels, his prior work could not be considered past work under 20 C.F.R. § 404.1560(b)(1).

Under the Act's regulations, to be considered "past relevant work" for RFC purposes, the work must be considered "substantial gainful activity " ("SGA"). 20 C.F.R. § 404.1560(b)(1). Earnings are one indicator of whether a particular job constitutes SGA. *See* 20 C.F.R. § 404.1574(a)(1). According to the Act, "[e]arnings . . . will ordinarily show that you have engaged in [SGA]" during the calendar years of January 1990 to June 1999 if you have earned, on average, more than $500 a month. 20 C.F.R. § 404.1574(a)(2)(i), Table 1.

In this case, Plaintiff earned, according to his submissions, $150.00 at Monroe Muffler and $376.37 at Rayco Auto Service, in both positions as an auto-mechanic/oil changer, for the year 1997. Plaintiff argues that, because these wages fell below SGA earning levels and because there is no evidence in the record that his work as a security guard was performed at SGA levels, the ALJ erred in considering this prior relevant work. However, Plaintiff's reliance on earning levels as dispositive of the issue of whether his prior work properly constitutes "past relevant work" is misplaced.

In *Soria v. Callahan*, 16 F. Supp. 2d 1145 (C.D. Cal. 1997), the court addressed a similar argument, i.e., that where wages fall below § 404.1574's prescribed table, the past work is not "relevant" within the Act's meaning. The court disagreed, noting that "earnings are not the end of the inquiry." *Id.* at 1149. The court explained that work may be considered SGA even though earnings were minimal. *See id.* In reaching this decision, the court relied upon an Eighth Circuit case in which a complainant worked as a part-time bookkeeper and apartment manager.

-11-

Although her earnings were below the Act's minimum, the Eighth Circuit reasoned that

> "Appellant's work as a secretary/bookkeeper and as an apartment
> manager was 'substantial' because it involved doing significant
> physical and mental activities.  Appellant's low earnings were in
> part due to the fact that she was either self-employed or only
> worked part time. . . .  In addition, her work as a
> secretary/bookkeeper and an apartment manager was 'gainful'
> because . . . it is the kind of work usually done for pay or profit,
> even though her earnings were minimal.  Work activity may be
> considered gainful whether or not a profit is realized."

*Id.* (quoting *Pickner* [*v. Sullivan,*] 985 F.2d [401,] 403 [(8th Cir. 1993)]).

Although both *Soria* and *Pickner* are factually distinguishable, the courts' reasons for

concluding that "earnings realized" is not dispositive of whether a complainant's past work

constituted SGA are persuasive.  Indeed, one court in this Circuit, in deciding the amount of

emphasis to place on the Act's earnings table, reached the same result, concluding that "[n]either

the Commissioner nor the Court . . . should slavishly follow the schedules." *Aragon-Lemus v.*

*Barnhart*, 280 F. Supp. 2d 62, 73 (W.D.N.Y. 2003).  The court reasoned that "there may be

circumstances in which such indiscriminate adherence to the amounts contained therein is not

proper." *Id.* (citing *DeRienzis v. Heckler*, 748 F. 2d 352, 354 (2d Cir. 1984)).  This proposition is

supported by the fact that, "[c]onsidering plaintiff's earnings alone, would render the other

factors listed in the regulations meaningless." *Id.*  As a result, "even though the earnings

amounts listed in the regulations would ordinarily indicate that plaintiff was not engaged in

[SGA], other factors must be considered as well." *Id.*

Ultimately, the ALJ concluded that Plaintiff has the RFC to perform light and sedentary

work based on his medical records, his own statements, and his own prior work activity.  The fact

-12-

that Plaintiff's earnings for the year 1997 fell below the earnings table does not preclude the

ALJ's finding that Plaintiff has retained the ability to do this kind of work.  Therefore, based

upon the substantial evidence before the ALJ, the Court adopts Magistrate Judge Di Bianco's

recommendation and affirms the ALJ's decision regarding this issue.

**E.      The ALJ's Credibility Determination**

It is well-established that the ALJ, rather than the reviewing court, addresses the

credibility of claimants and witnesses.  *See Haug v. Apfel*, No. 99 CIV. 443, 2000 WL 178212,

*7 (S.D.N.Y. Feb. 16, 2000) (citing *Aponte v. Secretary of Health and Human Servs.*, 728 F.2d

588, 591 (2d Cir. 1984)).  Where the ALJ's credibility determination is based upon substantial

evidence, the reviewing court will not disturb it.  *See id.*

In this case, the ALJ determined that "[t]he claimant's main problem here is credibility."

*See* AR at 17.  In reviewing the record, the ALJ reasoned that "though [Plaintiff] testified he uses

the cane often, the medical evidence clarifies that he does not need any assistive device."  *See id.*

Moreover, based on Plaintiff's daily activities, medical history, and admissions at the hearing, the

ALJ found that none of these indicia suggested "total work preclusion."  *See id.*  Finally, and

perhaps the death knell for Plaintiff's credibility, the ALJ noted that, although Plaintiff testified

that he served in Viet Nam for four years during his military service, VA records related to the

VA's denial of benefits to Plaintiff clearly state that Plaintiff was only in the military for two

month and never served in Viet Nam.  *See id.*

In his objections, Plaintiff argues that it was error for the ALJ to credit his statements

about his prior work history in Exhibit 16E but not his other work-history statements.  He does

not explain why this would constitute error.  Moreover, there is substantial evidence in the record

to support the ALJ's credibility determination.  Accordingly, the Court rejects Plaintiff's

argument in this regard.


## IV. CONCLUSION

After carefully considering Magistrate Judge Di Bianco's Report-Recommendation in this

matter, Plaintiff's objections thereto, and the relevant parts of the record, as well as the relevant

law, the Court hereby

**ORDERS** that Magistrate Judge Di Bianco's Report-Recommendation is **ADOPTED IN

ITS ENTIRETY**; and the Court further

**ORDERS** that Defendant's decision is **AFFIRMED** and Plaintiff's complaint is

**DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant and close this

case.

**IT IS SO ORDERED**.

**Dated:** June 27, 2006
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge